No. 68,488

Robin C. Overbaugh, *Plaintiff*, v. James W. Strange, *Defendant/Appellee*, and Kansas City Power & Light Company, *Defendant/Appellant*.

(867 P.2d 1016)

Opinion filed January 25, 1994.

*Michael A. Rump*, of Kansas City Power & Light Company, of Kansas City, Missouri, argued the cause and was on the brief for appellant.

*William O. Isenhour, Jr.*, of Soden, Isenhour & Cox, P.A., of Mission, argued the cause and was on the brief for appellee.

*Carlton W. Kennard*, of Spigarelli, McLane & Short, of Pittsburg, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

*J. Nick Badgerow*, of Spencer Fane Britt & Browne, of Overland Park, was on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

SIX, J.: This case involves the relationships under K.S.A. 1992 Supp. 40-3103(u) between Kansas City Power & Light Company (KCPL), a nonresident self-insurer employer, and James Strange, an employee, arising from their status as codefendants in an automobile negligence action. KCPL owned and self-insured the vehicle Strange was driving when he was involved in an accident. The trial court granted summary judgment for Strange on a cross-claim against him by KCPL, holding that Strange was acting within the scope of his employment and that KCPL had a duty to defend Strange and to pay attorney fees incurred by Strange. The Court of Appeals reversed. *Overbaugh v. Strange*, 18 Kan. App. 2d 365, 853 P.2d 80 (1993). We granted Strange's petition for review.

We affirm the result of the Court of Appeals opinion. We modify the opinion's analysis of the application of K.S.A. 1992 Supp. 40-3104(f) to KCPL. See *Strange*, 18 Kan. App. 2d at 367.

### Facts

The Court of Appeals summarized the facts as follows:

"Strange, while driving a KCPL vehicle, had an accident with plaintiff Robin C. Overbaugh, following which Strange was arrested for driving while under the influence. Strange was later discharged from his employment. KCPL settled with plaintiff, and the only remaining issue is KCPL's obligation to defend its former employee.

. . . .

"KCPL is a Missouri corporation and has certificates of self-insurance in both Missouri and Kansas. The accident occurred in Kansas . . . ." 18 Kan. App. 2d at 365-66.

The van Strange was driving was registered in the State of Missouri.

KCPL responded to Overbaugh's claim, asserting that (1) it was not vicariously liable for Strange's action because he was

acting outside the scope of his employment at the time of the accident and (2) Strange did not have KCPL's express or implied consent to operate the van at the time of the accident; thus, KCPL was not liable as a self-insurer. Both of these allegations were based on the contention that Strange's intoxication violated KCPL's employee conduct rules. Strange's position with KCPL was as a telephone technician, and his responsibilities involved the installation, repair, and maintenance of telephone systems at KCPL facilities.

Strange reported to the first assigned job site, performed his assigned work, and left. He failed to report to either the second or third job sites. Strange ate lunch after he left the first job site and then went to an American Legion hall where he spent the remainder of his regular working hours consuming beer and vodka. At some time in the afternoon, Strange left the Legion hall. He testified it was his intent to return the company van to the KCPL service center and drive his car home. During the drive to the service center, Strange collided with Overbaugh's car, which was stopped in front of him.

KCPL moved for summary judgment on the issues of vicarious liability and self-insurer coverage. Strange filed a motion for partial summary judgment on the same issues and sought a ruling that KCPL had a duty, as self-insurer, to defend Strange and pay his attorney fees.

After the district court's adverse ruling, KCPL entered into a settlement agreement with Overbaugh, who is not a party in this appeal, and obtained a release for both KCPL and Strange. A journal entry of partial dismissal was filed which dismissed all claims and issues in the case, with the exception of the question of KCPL's duty to defend Strange and to pay his attorney fees.

The Kansas Association of Defense Counsel (KADC) and the Kansas Trial Lawyers Association (KTLA) have filed *amicus curiae* briefs.

Strange does not dispute the facts as set forth by the Court of Appeals. Additionally, he asserts that his personal liability insurer disclaimed insurance coverage for the accident, reasoning that "[t]he involved vehicle does not meet the policy definition of non-owned car; therefore, no coverage will extend." This uncontroverted fact was adopted by the trial court.

## A Self-Insurer's Duty to Defend

The Court of Appeals acknowledged that a self-insurer must comply with the provisions of K.S.A. 40-3107, but reasoned that

"[t]he duty to defend is not imposed by operation of law—it is imposed by agreement. *Glenn v. Fleming,* 247 Kan. 296, 312, 799 P.2d 79 (1990)

. . . .

"As a self-insurer, KCPL's obligations are not necessarily the same as a regular insurance company. The certificate of self-insurance is not a motor vehicle liability policy. See *Glens Falls Ins. Co. v. Consolidated Freightways,* 242 Cal. App. 2d 774, 51 Cal. Rptr. 789 (1966)." 18 Kan. App. 2d at 367.

The court also explained that

"K.S.A. 1992 Supp. 40-3104(f) defines the responsibilities of a self-insurer. That statute provides that KCPL, if it has more than 25 vehicles registered in its name in Kansas, may qualify as a self-insurer. To do so, the insurance commissioner must be satisfied that KCPL is possessed of the ability to pay any judgment obtained against 'such person' (KCPL) arising out of the use of a KCPL-owned vehicle. Failure to pay a judgment against KCPL as self-insurer within 30 days is grounds for cancellation of the certificate of self-insurance.

"In other words, KCPL had no obligation to pay any judgment against Strange. It was obligated only to pay a judgment against itself. Since KCPL had no obligation to pay a judgment against Strange, we fail to see how it could have a duty to defend Strange against a judgment for which it was not responsible." 18 Kan. App. 2d at 367-68.

The court concluded as follows: "In Kansas, there is no statutory requirement for an insurance company to provide a defense for its insured. The duty to defend is provided contractually." 18 Kan. App. 2d at 368.

The Court of Appeals placed KCPL under K.S.A. 1992 Supp. 40-3104(f) as a resident self-insurer having 25 or more motor vehicles registered in Kansas. We reason that the correct placement is under K.S.A. 40-3106(b) by reason of the K.S.A. 1992 Supp. 40-3103(u) reference to nonresident self-insurers. K.S.A. 40-3106(b) references the K.S.A. 40-3107(b) requirements. The vehicle in question was registered in Missouri. KCPL is a Missouri corporation. The trial court adopted, as uncontroverted, the fact that KCPL had been approved as a self-insurer under Missouri law for vehicles registered in Missouri.

## Strange's Contentions

Strange argues that Kansas has mandated the assumption of all

obligations that exist under a standard automobile liability insurance policy by requiring certification of compliance with K.S.A. 40-3107. According to Strange, assuming the obligations of an insurer under K.S.A. 40-3107 includes the obligation to provide a defense to drivers.

Strange maintains that KCPL was required to provide him with coverage "against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of any such vehicle" under K.S.A. 40-3107(b). He asserts that 40-3107(b) must be interpreted to give the term "loss from" a meaning which includes the defense against claims and the costs and expenses of litigation.

Strange takes the position that the Court of Appeals failed to address the significance of the phrase "loss from" and interpreted the statute in such a way as to render the term meaningless. He believes the Court of Appeals has rewritten that statute to require insurers and self-insurers to insure only "against damages" or only "against the liability imposed by law for damages."

The Court of Appeals addressed Strange's reliance on *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973), and *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), by reasoning that these "cases can be cited for the proposition that where there is coverage, there is a duty to defend. But in both cases, the insurance *contract* specifically provided for payment of damages *and* a duty to defend the insured." *Strange*, 18 Kan. App. 2d at 367.

Strange counters with the claim that the holding in *Spruill* was not based upon a contractual obligation to furnish a defense. Strange misreads *Spruill*. The policy at issue in *Spruill* did, in fact, contain a defense clause. 212 Kan. at 684. The *Spruill* language relied on by Strange concerns the scope of a duty to defend arising out of the contractual obligation. We agree with the Court of Appeals' analysis.

Strange believes cases relating to insurance policies also apply in the self-insurance context. Strange asserts that *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990), does not say that a duty to defend must always be contractual or that it can never arise by operation of law. Although we agree with Strange's observation concerning our holding in *Glenn*, we do not agree that contractual

concepts arising from insurance law control the disposition of the instant case. We concluded in *Glenn*, relying on *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 79, 652 P.2d 665 (1982), that any duty of an insurer to settle or appeal arises from its contractual obligation to defend and, if breached, an action based upon that duty sounds in contract, not in tort. 247 Kan. at 312-13.

Strange reasons that the Court of Appeals decision means that even though employees would be indemnified by the employer against claims for damages by third parties, the employees personally would be required to defend themselves against such claims. Strange also observes that, as in the case at bar, employees would be required to defend against claims by the employer that the employee did not have permission to operate the vehicle. He notes that in a case in which an employee's own insurance fails to provide liability protection in the employment setting, the employee is "left naked" as to the costs associated with defending a claim.

## KCPL's Contentions

KCPL counters by emphasizing that Strange has consistently presented himself as a victim. According to KCPL, nothing could be further from the truth. Instead of performing his job, Strange spent the afternoon in a bar drinking and was driving while under the influence. KCPL observes that Strange's conduct violated both a KCPL work rule, which Strange knew about, and Kansas law. The scope of employment issue is not before us. KCPL did not appeal the trial court's ruling. Overbaugh, the claimant, has been paid by KCPL and has released Strange and KCPL. We characterize Strange, on appeal, as a permissive user of the vehicle under K.S.A. 40-3107(b).

KCPL disagrees with Strange's contention that thousands of Kansas employees will be placed in the position of having to defend themselves in claims arising from the operation of their employers' motor vehicles. KCPL believes that such a view ignores the statutory scheme for self-insurance and the requirement that a party must own 25 motor vehicles to qualify. According to KCPL, it would be in the self-interest of employers to defend their employees in work-related lawsuits. KCPL asserts that a

conflict between an employer and employee could only arise when an employee's actions, such as Strange's, are alleged to be outside the scope of his or her employment.

KCPL reasons that because insurance is a matter of contract, parties are free to choose the terms of their contracts. According to KCPL, insurance companies incorporate defense language into policies not because they are required by law to do so, but because such provisions allow them to protect their interests by taking control of the lawsuit or claim made against their insured. KCPL concludes that an insurance company, through its policy contract, agrees to assume certain risks and responsibilities and calculates fees based upon the potential financial obligations that could result from assuming those risks. KCPL takes the position that the self-insurer assumes only those risks and responsibilities imposed by the governing statutes. KCPL claims that it had not promised or represented that it would defend Strange in actions arising from Strange's negligent operation of KCPL's vehicle. KCPL advances the view that if there are public policy issues regarding the obligation of self-insurers to defend operators of self-insured vehicles, they should be addressed by the legislature.

### K.S.A. 1992 Supp. 40-3103(u), K.S.A. 1992 Supp. 40-3104(f), K.S.A. 40-3106, and K.S.A. 40-3107(b)

Strange reasons that when the Court of Appeals determined that KCPL was not responsible for the judgment against him, it erroneously relied on K.S.A. 1992 Supp. 40-3104(f), which applies only to Kansas self-insurers of vehicles registered in Kansas. We agree. The KCPL vehicle involved in the accident was registered in Missouri; consequently, K.S.A. 40-3106 applies. K.S.A. 40-3106 requires a nonresident either to qualify as a self-insurer under K.S.A. 1992 Supp. 40-3104(f) or comply with 40-3107. K.S.A. 40-3107 makes the self-insurer liable for judgments against permissive users such as Strange up to the monetary limits imposed. Strange overlooks the alternative route for nonresident self-insurer operation of motor vehicles in Kansas, i.e., qualifying under K.S.A. 1992 Supp. 40-3104(f). We have no signal from the record as to which statutory alternative KCPL used. Use of K.S.A. 1992 Supp. 40-3104(f) only would require KCPL to pay "any judgment obtained against such person", i.e., KCPL and not

Strange. We think the ambiguity created by the two standards for qualification for a nonresident self-insurer in K.S.A. 40-3106 is resolved in the instant action by K.S.A. 1992 Supp. 40-3103(u), which defines self-insurer as "any person effecting self-insurance pursuant to subsection (f) of K.S.A. 40-3104, and amendments thereto, or any nonresident self-insurer that has filed the form prescribed in subsection (b) of K.S.A. 40-3106, and amendments thereto."

We find no indication in the record that KCPL filed the 40-3106(b) form; however, KCPL informs us in its brief that "[b]y opting to become a self-insurer, KCPL has represented that it will pay any damages caused by Strange while operating covered vehicles." We reason that KCPL was subject to K.S.A. 40-3107.

### Contentions of *Amici Curiae*

*Amicus* KADC supports the contentions of KCPL. In discussing the absence of a common-law basis for imposing a duty to defend, KADC observes that commentators have found that "[t]here is no apparent overriding reason why a liability insurer . . . must be required to provide a defense. . . . [L]iability insurance can be provided which only commits the insurer to indemnify the insured for amounts which the insured is legally obligated to pay." Keeton & Widiss, Insurance Law § 9.4(c)(4) (1988). KADC explains that the Kansas Legislature has acted in the public interest to protect citizens who are injured in an automobile accident and are entitled to damages by requiring assurances of financial responsibility but has not, at the same time, perceived a need to impose a duty to defend on self-insurers.

*Amicus* KTLA supports the contentions advanced by Strange. KTLA asserts that the Court of Appeals has, in essence, said that the filing of a self-insurance certificate creates no duty on the part of the self-insurer to pay judgments against anyone other than the self-insurer itself. The result is that no duty is imposed to defend permissive users of a self-insurer's vehicle.

KTLA argues that the Court of Appeals opinion means that "either the self-insurer is required to comply with or provide coverage as outlined in K.S.A. 40-3107 or else it pays only those judgments entered against it on some type of agency or negligent entrustment theory. This leaves an employee who is allowed to take the company car home and use it for personal business without insurance when he takes the car to the

grocery store. We would submit the self-insurer is then guilty of a class B misdemeanor by permitting the operation of an uninsured motor vehicle in violation of K.S.A. 40-3104."

Our modification of the Court of Appeals opinion addresses KTLA's concern. KCPL's nonresident registration of the vehicle involved brings KCPL under K.S.A. 40-3107.

KTLA advances the view that the legislature intended insurance companies and self-insurers to be treated the same under the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.* For example, self-insurers and insurance companies are (1) each required to provide personal injury protection benefits and have identical subrogation rights in regards to payment of the same (K.S.A. 40-3107, K.S.A. 40-3108, and K.S.A. 1992 Supp. 40-3113a); (2) treated the same in regard to the determination of who is to provide the primary benefit coverage (K.S.A. 1992 Supp. 40-3109[b]); and (3) treated the same in that both are required to participate in the assigned claims plan under K.S.A. 1992 Supp. 40-3116. KTLA claims that the intention of the legislature regarding the similar treatment of insurers and self-insurers would be defeated if the nonresident self-insurer is allowed to deny responsibility for judgments against permissive users. We agree. KTLA observes that, practically speaking, the issue of a self-insurer's duty to defend will rarely arise. Again, we agree.

## Discussion

A nonresident owner of a motor vehicle operated on the highways of this state is subject to the provisions of the KAIRA. See *State Farm Mut. Auto. Ins. Co. v. Baker,* 14 Kan. App. 2d 641, Syl. ¶ 1, 797 P.2d 168, *rev. denied* 247 Kan. 705 (1990). The accident occurred in Kansas. The Court of Appeals correctly determined that Kansas law was controlling. 18 Kan. App. 2d at 366.

The question of whether a self-insurer has a duty to defend its employees is a more difficult question to resolve. Despite Strange's arguments to the contrary, the language of the KAIRA does not establish such a duty. K.S.A. 40-3107(b) does not impose the duty to defend an employee on a self-insurer. Strange takes the 40-3107(b) term "against loss" out of context when he claims

it provides a basis for requiring the payment of the costs of defense, including an employee's attorney fees, by a self-insurer. The term "against loss" modifies "the liability imposed by law for damages." Consequently, the only loss specified under 40-3107(b) is that loss which is from damages, not attorney fees. The requirement that self-insurers must provide 40-3107 coverage is not the same as saying all aspects of a vehicle liability insurance policy must be applied in the self-insurance context. What particular contract language should a court apply?

The KAIRA does not require that self-insurers defend their employees. However, the KAIRA does require nonresident self-insurers to pay judgments entered against employees. See K.S.A. 40-3107(b). The reality of the situation is that employees will be defended. Injured plaintiffs are interested in the "target defendant," the self-insured employer, who owns the vehicles. Respondeat superior imposes vicarious liability on the employer for the negligent driving of the employee. Self-insured employers exposed to the possibility of liability for a judgment entered against an employee, aware of the economics of the marketplace, will provide a defense.

Cases cited by the parties and additional ones located through our research address the duties of self-insurers under particular state statutes. Many involve disputes between insurance carriers and self-insurers who were attempting to determine who was responsible for what portion of the liability. In such a context, courts often claim that self-insurance is not equivalent to insurance and, therefore, is not subject to insurance statutes or insurance contract clauses governing an excess coverage or an uninsured motorist situation. See, e.g., *Lipof v. Florida Power & Light Co.*, 558 So. 2d 1067, 1068 (Fla. Dist. App. 1990); *American Family Mut. Ins. Co. v. Missouri P. & L. Co.*, 517 S.W.2d 110, 113-14 (Mo. 1974); and *Home Indemnity Co. v. Humble Oil & Refining Co.*, 314 S.W.2d 861, 865-66 (Tex. Civ. App. 1958).

## Attorney Fees

The trial court, in awarding Strange attorney fees in connection with the defense against KCPL's cross-claim, stated:

"Now, the second question is whether the amount is appropriate. And I looked at it first thinking, well, maybe it's appropriate to have KCP&L pay

the cost of defending the underlying claim. But then that's not logical either. And it seems to me that all of the attorney's fees that were generated in this case were really as a result of KCP&L not taking the original obligation and taking care of the underlying lawsuit in the first place."

The Court of Appeals concluded the following concerning the fee issue: "Since KCPL had no duty to defend Strange, it must follow that it is not responsible for Strange's attorney fees." 18 Kan. App. 2d at 368. We agree.

Strange maintains that there is no doubt whatsoever that he was, in fact, the prevailing party on the issues KCPL originally raised and litigated in its declaratory judgment action. He also claims that the fact KCPL has not further pursued this issue means that it may not now be allowed to question his right to recover fees and expenses incurred in successfully defending against the declaratory judgment claim.

We acknowledge that Strange's argument has a certain ring of fairness to it. We reason, however, that a change in policy imposing on self-insurers the duty to defend and to pay attorney fees and other defense costs, under a fact situation such as in the case at bar, must be made by the legislature.

*Missouri Medical Ins. Co. v. Wong*, 234 Kan. 811, 823, 676 P.2d 113 (1984), a case relied on by Strange, applied *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, and K.S.A. 40-256 (attorney fees in actions on insurance policies). The trial court's award of fees to an insured physician who defended a declaratory judgment action was upheld. The action was brought by a medical malpractice carrier seeking cancellation and construction of a medical malpractice policy. K.S.A. 40-256 does not mention self-insurance. Consequently, neither 40-256 nor *Missouri Medical* serve as authority for a fee award in the case at bar.

Additionally, the fact that K.S.A. 40-256, as well as certain sections of the KAIRA, *e.g.*, K.S.A. 1992 Supp. 40-3113a(e) (remedy against a tortfeasor; the court shall fix attorney fees which shall be paid proportionately by the insurer or self-insurer and the injured person) and K.S.A. 40-3111(b) (attorney entitled to reasonable fee for advising and representing a claimant in a personal injury protection action), demonstrate that the legislature addressed fee issues without providing an insured with fees for

defending in a declaratory judgment action. We note one of the more common rules of statutory interpretation, *expressio unius est exclusio alterius,  i.e.,* the mention or inclusion of one thing implies the exclusion of another. The rule assists in determining legislative intent. *State v. Luginbill,* 223 Kan. 15, 20, 574 P.2d 140 (1977).

We encounter difficulty in resolving the fee issue in favor of Strange. "Generally, in Kansas, absent an applicable Supreme Court rule or express contractual or statutory authority to the contrary, parties bear the cost of their own attorney fees." *Leiker v. Gafford,* 249 Kan. 554, 561, 819 P.2d 655 (1991).

### Jurisdiction and Acquiescence

We agree with the Court of Appeals' analysis of the issues of jurisdiction and acquiescence:

"Initially, Strange argues we lack jurisdiction because KCPL did not timely file its notice of appeal. Strange filed an earlier motion to dismiss on jurisdictional grounds, which we denied.

"The final judgment in this case was filed on July 23, 1992. At that time, two journal entries were filed: One dismissed all claims except the issue of KCPL's duty to defend and pay Strange's attorney fees, and the other fixed the amount of those fees and denied KCPL's motion for reconsideration. KCPL filed its notice of appeal on July 28, 1992, well within the period provided by K.S.A. 1992 Supp. 60-2103.

"Strange also argues KCPL has acquiesced in the trial court's order with respect to the duty to defend. We disagree.

"After the trial court's ruling that KCPL had a duty to defend Strange, counsel for KCPL entered his appearance for Strange. But, KCPL notified Strange and his personal attorney that this was being done because of the trial court's order and that KCPL was reserving the right to appeal the trial court's ruling, if necessary.

"The above facts do not equal acquiescence. An insurer, and therefore a self-insurer, may assume the defense of an insured under a reservation of rights and later appeal coverage and duty to defend issues. See *Henry v. Johnson,* 191 Kan. 369, 376, 381 P.2d 538 (1963)." 18 Kan. App. 2d at 366.

### Conclusion

The Court of Appeals opinion is affirmed as modified. We have stayed the judicial hand from imposing a duty to defend and a duty to pay the costs of defense, including attorney fees. We have interpreted K.S.A. 1992 Supp. 40-3103(u), K.S.A. 40-3106 and K.S.A. 40-3107 to require nonresident self-insurers to cover the self-insurer "and any other person . . . using any such ve-

hicle with the expressed or implied consent" of the self-insurer against "liability imposed by law for damages." K.S.A. 40-3107(b).

We observe that the K.S.A. 40-3106(b) requirement referencing "every insurance company authorized" is in a section of the KAIRA relating to nonresidents. K.S.A. 1992 Supp. 40-3104(f) sets out the requirements for resident self-insurers. Resident and nonresident self-insurers are defined in K.S.A. 1992 Supp. 40-3103(u). A resident self-insurer appears only to be required to pay "any judgment obtained against such person." K.S.A. 1992 Supp. 40-3104(f). "Failure to pay any judgment against a self-insurer . . . shall constitute reasonable grounds for the cancellation of a certificate of self-insurance." K.S.A. 1992 Supp. 40-3104(f). We are puzzled by what appears in the KAIRA to be a broader coverage requirement imposed on a nonresident self-insurer than on a resident self-insurer. The legislature may wish to revisit the appropriate KAIRA self-insurer statutes.

Judgment of the Court of Appeals reversing the district court is affirmed as modified. Judgment of the district court is reversed.