No. 91,523

FARMERS INSURANCE COMPANY, INC., and ROGER KANDT, *Plaintiffs*, v. SOUTHWESTERN BELL TELEPHONE COMPANY, *Defendant*.

113 P.3d 258

Opinion filed June 10, 2005.

*E. Craig Kennedy*, of Johnson, Kennedy, Dahl & Willis, of Wichita, argued the cause, and *Gerald W. Scott*, of Law Office of Gerald W. Scott, P.A., of Wichita, was with him on the brief for plaintiffs.

*Timothy S. Pickering*, of Southwestern Bell Telephone, L.P., of Topeka, argued the cause, and *Bruce A. Ney* and *Melanie N. Sawyer*, of Southwestern Bell Telephone, L.P., of Topeka, were with him on the brief for defendant.

The opinion of the court was delivered by

*Per Curiam*: The United States District Court for the District of Kansas certified two questions regarding the application of uninsured motorist coverage to a self-insured employer: (1) "Are [plaintiffs'] claims barred by the exclusive remedy provision of the Workers Compensation Act," and (2) "In Kansas, is a self-insurer required to provide uninsured motorist benefits to the occupants of its motor vehicles"?

On September 15, 1997, Roger Kandt was involved in an automobile accident in Wichita, Kansas. At the time of the accident, Kandt was driving a motor vehicle owned by his employer, Southwestern Bell Telephone Company (SBC). The driver of the other vehicle was Roman Williams, an uninsured motorist.

As a result of the accident, on December 15, 1999, Kandt filed a lawsuit in state district court against Williams. On September 15, 2000, Kandt was awarded a judgment against the uninsured, Williams, in the amount of $593,229. At the time of the accident,

Kandt had an individual policy of automobile insurance with Farmers Insurance Company, Inc. (Farmers). Farmers paid Kandt $100,000 of the judgment against Williams pursuant to the uninsured motorist coverage provided by its automobile insurance policy with Kandt.

In December 1997, Kandt filed a claim for workers compensation with SBC. The workers compensation claim was settled on March 21, 2002. As a result of the settlement, Kandt was awarded workers compensation benefits from SBC totaling $83,054.15, which consisted of temporary total and permanent partial disability compensation in the amount of $43,664.12, and medical and hospital expenses in the amount of $39,390.03.

On November 13, 2002, Farmers and Kandt filed suit against SBC, a self-insured entity under the laws of the State of Kansas, for $500,000. Kandt sought payment by SBC for the judgment entered against the uninsured motorist. Farmers sought reimbursement from SBC for the $100,000 it had paid to Kandt pursuant to the uninsured motorist provision of its automobile insurance policy.

On December 16, 2002, SBC removed this action on the basis of diversity jurisdiction from the district court of Sedgwick County to the federal district court of Kansas. Pursuant to K.S.A. 60-3201, this court may answer questions of law certified to it by a United States district court. The United States District Court for the District of Kansas certified two questions. The questions are: (1) Are plaintiffs' claims barred by the exclusive remedy provision of the Workers Compensation Act, and (2) under Kansas law, is a self-insurer required to provide uninsured motorist benefits to the occupants of its motor vehicles? A certified question of law is reviewed using an unlimited standard. *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 765, 986 P.2d 377 (1999).

To follow the order of the parties' briefs and the decision of a majority of this court, we analyze the certified questions in reverse order from that posed by the federal district court.

*Under Kansas law, is a self-insurer required to provide uninsured motorist benefits to the occupants of its motor vehicles?*

To determine whether the Kansas uninsured/underinsured motorist (UM/UIM) statute applies to self-insured employers, we first look to the language of the statute. When interpreting the language of a statute, the fundamental rule is that the intent of the legislature governs if that intent can be ascertained. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

Courts presume that the legislature expressed its intent through the language of the statute, so when a statute is plain and unambiguous, the court must give effect to the legislature's intent as it is expressed. 275 Kan. at 305. When interpreting a statute, ordinary words are given their ordinary meanings. A statute should not be read to add something that is not found in the plain words used by the legislature or delete something that is clearly found within the ordinary language used. *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001).

The UM/UIM statute, K.S.A. 40-284, provides in pertinent part:

"(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization. No insurer shall be required to offer, provide or make available coverage conforming to this section in connection with any excess policy, umbrella policy or any other policy which does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation or use of a specifically insured motor vehicle."

Without addressing the language of the statute, Farmers and Kandt argue that Kansas courts have equated self-insured retentions with other insurance and concluded that self-insurers must be treated the same as insurers. To support this conclusion, they rely on *AT&SF Ry. Co. v. Stonewall Ins. Co*, 275 Kan. 698, 749, 71 P.3d 1097 (2003).

After review, we note that *AT&SF Ry. Co.* does not support Farmers and Kandt's general conclusion that self-insureds must be treated like other insurers. In *AT&SF Ry. Co.*, the issue was whether the insurance policies, which provided excess insurance, required indemnification of AT&SF for settlement payments it made to employees who had suffered work-related hearing loss. AT&SF claimed that its self-insured retentions (SIR's) were not "other insurance" within the terms of its insurance policies and that the excess liability insurers' policies, by contract, provided primary indemnification.

The *AT&SF Ry. Co.* court looked beyond the narrow definition of "insurance" to determine the purpose of the "other insurance" clause in AT&SF's excess insurance policies. The court reasoned that it was unacceptable for AT&SF to " 'manipulate the source of its recovery and avoid the consequences of its decision to become self-insured' " by focusing on the literal interpretation of the word "insurance." 275 Kan. at 749. Inherent in the *AT&SF Ry. Co.* court's analysis was the court's interpretation of the excess insurance policies rather than a general analysis of self-insurers. The court noted this limitation, stating: "We conclude that the SIRs are 'other insurance' within the meaning of the policies in the present case." 275 Kan. at 749. Accordingly, *AT&SF Ry. Co.* does not provide a general conclusion regarding self-insurers that can be applied to this case.

SBC argues that the plain language of the statute applies only to purchased insurance policies and does not include self-insurers. SBC reasons that a certificate of self-insurance is not an automobile liability policy delivered or issued for delivery in this state because a self-insurer cannot contract with itself or pay premiums to itself. To support its conclusion that a certificate of self-insurance is not the same as an automobile liability insurance policy, SBC relies on *Overbaugh v. Strange*, 254 Kan. 605, 867 P.2d 1016 (1994). We also find that *Overbaugh* does not support this conclusion.

The *Overbaugh* court considered whether an out-of-state, self-insured employer was required to provide a defense for its negligent employee. The *Overbaugh* court concluded that the employer had not qualified as a self-insurer in Kansas because it had failed

to file the necessary form with the Kansas Insurance Commissioner to be a self-insurer. As a result, the employer was required to comply with the requirements of K.S.A. 40-3107 (required contents for motor vehicle liability insurance policies) rather than K.S.A. 40-3104(f) (required coverage for self-insurers). 254 Kan. at 612. We conclude that *Overbaugh* does not determine whether an in-state, self-insured employer is equivalent to a motor vehicle liability insurer.

As noted by SBC, K.S.A. 40-284 refers specifically to an "automobile liability insurance policy." We note that a policy of insurance is "[a]n instrument in writing, by which one party (insurer), in consideration of a premium, engages to indemnify another (insured) against a contingent loss, by making him a payment in compensation, whenever the event shall happen by which the loss is to accrue." Black's Law Dictionary 1157 (6th ed. 1990). SBC does not contract with itself or pay premiums to itself. Thus, SBC does not issue a policy of insurance.

A further review of the appropriate statutes reveals that our legislature has separately defined insurers and self-insurers. K.S.A. 40-3103(g) defines an insurer as "any insurance company, as defined by K.S.A. 40-201, and amendments thereto, authorized to transact business in this state, which issues policies of motor vehicle liability insurance covering liability arising out of the ownership, operation, maintenance or use of a motor vehicle." K.S.A. 40-201 provides: "For the purposes of this article the term 'insurance company' shall, unless otherwise provided, apply to all corporations, companies, associations, societies, persons or partnerships writing contracts of insurance, indemnity or suretyship upon any type of risk or loss."

K.S.A. 40-3103(u) defines a self-insurer as "any person effecting self-insurance pursuant to subsection (f) of K.S.A. 40-3104, and amendments thereto, or any non-resident self-insurer that has filed the form prescribed in subsection (b) of K.S.A. 40-3106, and amendments thereto." K.S.A. 40-3104(f) provides:

"Any person in whose name more than 25 motor vehicles are registered in Kansas may qualify as a self-insurer by obtaining a certificate of self-insurance from the commissioner of insurance. The certificate of self-insurance issued by

the commissioner shall cover such owned vehicles and those vehicles, registered in Kansas, leased to such person if the lease agreement requires that motor vehicle liability insurance on the vehicles be provided by the lessee. Upon application of any such person, the commissioner of insurance may issue a certificate of self-insurance, if the commissioner is satisfied that such person is possessed and will continue to be possessed of ability to pay any liability imposed by law against such person arising out of the ownership, operation, maintenance or use of any motor vehicle described in this subsection. . . .

"Upon notice and a hearing in accordance with the provisions of the Kansas administrative procedure act, the commissioner of insurance may cancel a certificate of self-insurance upon reasonable grounds. Failure to provide liability coverage or personal injury protection benefits required by K.S.A. 40-3107 and 40-3109, and amendments thereto, or pay any liability imposed by law arising out of the ownership, operation, maintenance or use of a motor vehicle registered in such self-insurer's name, or to otherwise comply with the requirements of this subsection shall constitute reasonable grounds for the cancellation of a certificate of self-insurance. . . .

"Self-insureds shall investigate claims in a reasonably prompt manner, handle such claims in a reasonable manner based on available information and effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear.

"As used in this subsection, 'liability imposed by law' means the stated limits of liability as provided under subsection (e) of K.S.A. 40-3107, and amendments thereto."

A self-insurer must be able to pay any liability assessed against it that is not greater than $25,000 due to bodily injury or death of one person from a single accident or not greater than $50,000 due to bodily injury or death of more than one person from a single accident. See K.S.A. 40-3104(f); K.S.A. 40-3107(e). Likewise, the self-insurer must be able to pay any liability of not greater than $10,000 due to the destruction of another person's property in a single accident. K.S.A. 40-3107(e). We note that K.S.A. 40-3107 does not include UM/UIM coverage.

Since the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.*, was originally enacted, the legislature has limited the requirements for self-insurers. As originally enacted, K.S.A. 40-3104 provided:

"Any person in whose name more than twenty-five (25) motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance from the commissioner of insurance. Upon application of any such person, the

commissioner of insurance may issue a certificate of self-insurance, if the commissioner is satisfied that such person is possessed and will continue to be possessed of ability to pay *any judgment* obtained against such person arising out of the ownership, operation, maintenance or use of any motor vehicle registered in such person's name." (Emphasis added.) L. 1973, ch. 198, sec. 4(d).

The legislature's use of the phrase "any judgment" in the original version of K.S.A. 40-3104(f) must be compared with the current statutory language which refers to "any liability imposed by law." The addition of the term "liability" is significant to the meaning of the statute. Although a self-insurer was originally required to pay *any* judgment against it, the self-insurer is now only required to pay *any liability* judgments within established limits.

The legislature has not defined "liability" in the KAIRA. The term "liability" could be interpreted broadly to include any type of legal responsibility for damages due to bodily injury, death, or property destruction, including any injuries to the persons occupying the self-insured vehicle or damages to the self-insured vehicle, regardless of fault. See Black's Law Dictionary 914 (6th ed. 1990). A broad definition would include UM/UIM coverage because fault would not be probative on the issue of liability. The legislature's use of the phrase "arising out of" in K.S.A. 40-284 and K.S.A. 40-3104(f) supports a broad definition.

However, a careful review of the language in K.S.A. 40-284 indicates that the legislature has defined "liability" narrowly to include only the damages *caused* by accident and arising out of the ownership, operation, maintenance, or use of the self-insurer's vehicle. In K.S.A. 40-284, the legislature refers to an "automobile liability insurance policy" and states that such policy must have a provision for UM/UIM coverage with limits equal to the "limits of *liability coverage* for bodily injury or death." (Emphasis added.) By requiring the UM/UIM coverage to have the same limits as the *liability coverage*, the legislature distinguishes the two. If the legislature considered liability coverage broadly to incorporate UM/ UIM coverage, there would be no need to require equivalent coverage limits because they would already be the same. This narrow definition of "liability" depends on fault. Black's Law Dictionary defines liability insurance as "[t]hat type of insurance protection

which indemnifies one from liability to third persons as contrasted with insurance coverage for losses sustained by the insured." Black's Law Dictionary 915 (6th ed. 1990). Thus, liability only results when the self-insured vehicle causes the injuries or damages. UM/UIM coverage, by its very name, requires the fault to lie with the other vehicle, not the self-insured vehicle. Accordingly, the legislature has not incorporated UM/UIM coverage in the term "any liability imposed by law" as used in K.S.A. 40-3104(f).

Furthermore, the legislature's distinction between liability insurance and UM/UIM coverage is further emphasized by the organization of the statutory requirements. Not only are the UM/UIM requirements in a separate statute, they also appear in separate legislative acts that preceded the KAIRA. See L. 1968, ch. 273 (K.S.A. 40-284); L. 1973, ch. 198 (K.S.A. 40-3101 *et seq.*). We note that when the legislature enacted the KAIRA, it did not incorporate K.S.A. 40-284 into the KAIRA, but left K.S.A. 40-284 in the general statutes pertaining to insurers and insurance policies. See K.S.A. 40-201 *et seq.* If the legislature had intended for self-insurers to comply with K.S.A. 40-284, it would have specifically included that requirement in K.S.A. 40-3104(f). Accordingly, the answer to the federal district court's question is NO, self-insurers in Kansas are not required to provide UM/UIM coverage to the occupants of its motor vehicles.

Our analysis of the legislation affecting self-insurers and UM/UIM coverage reveals four premises that support the conclusion that the legislature intended to treat self-insurers and insurers differently. First, the legislature, when enacting K.S.A. 40-284, used specific language which refers to an "automobile liability insurance policy." Second, our legislature defined insurer and self-insurer differently without stating that self-insurers were equivalent to insurers. Third, the statutory language implies a narrow definition of liability and limits the requirements for self-insurers. Fourth, the UM/UIM statute was placed in the general statutes pertaining to insurers rather than in the KAIRA.

Based on our analysis of the applicable statutes, the legislature articulated its intent to treat self-insurers differently than insurers. Thus, the requirements for insurers cannot be applied to self-in-

surers without a specific statement of the legislature. The legislature has outlined specific requirements for self-insurers and did not include a requirement that self-insurers provide UM/UIM coverage.

*Are plaintiffs' claims barred by the exclusive remedy provision of the Workers Compensation Act?*

Because this court's analysis determined that a self-insurer is not required to provide UM/UIM coverage, we will not address the federal district court's question regarding the exclusivity of workers compensation.

Certified question one is not addressed; certified question two is determined and the answer is no.

GERNON, J., not participating.

DAVIS, J., dissenting: I disagree with the majority analysis that the legislation affecting self-insurers and UM/UIM coverage supports the conclusion that the legislature intended to treat self-insurers and insurers differently. In reaching its conclusion, the majority first reasons that the legislature, when enacting K.S.A. 40-284, used specific language which refers to an "automobile liability insurance policy"; second, the legislature defined insurer and self-insurer differently without stating that self-insurers were equivalent to insurers; third, the statutory language implies a narrow definition of liability and limits the requirements for self-insurers; and fourth, the UM/UIM statute was placed in the general statutes pertaining to insurers rather than in the KAIRA.

Although there are no Kansas appellate court decisions on this issue, the parties acknowledge that authority exists in other jurisdictions for both sides of the issue. I believe this court should look at those jurisdictions which have recognized similar purposes for insurance laws as Kansas. I note that Kansas appellate courts have been consistent in stating the purpose of Kansas insurance laws and equally consistent on how those laws should be construed. In *DeWitt v. Young*, 229 Kan. 474, 478, 625 P.2d 478 (1981), this court stated:

"The legislative purpose mandating motor vehicle liability insurance for every motor vehicle driven on Kansas public highways is again expressed in K.S.A. 1980 Supp. 40-3118(a), and also in K.S.A. 40-284 which requires uninsured motorist coverage to protect an insured who is injured by an uninsured owner or operator of a vehicle."

In *Winner v. Ratzlaff*, 211 Kan. 59, Syl. ¶¶ 1, 2, 505 P.2d 606 (1973), this court recognized that the purpose of legislation mandating the offer of uninsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation. The *Winner* court stated this coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages. Remedial statutes mandating the offer of uninsured motorist coverage should be liberally construed to provide the intended protection.

Probably the best discussion of this issue is found in *Cowell v. Allstate Insurance Co.*, 175 Vt. 61, 69-71, 819 A.2d 727 (2003). I note that Vermont is similar to Kansas in that it has a financial responsibility law and a separate uninsured motorist law. The Vermont Supreme Court held that these two statutes must be considered together. In *Cowell*, the Vermont court reviewed decisions from many jurisdictions on this issue and then concluded:

"First, the Legislature intended self insurance to operate on an equal footing with traditional liability insurance. Second, requiring Bell Atlantic to provide UIM benefits to injured workers is not inconsistent with the purpose of the Workers' Compensation Act and our precedents interpreting it. Third, the Legislature's intent to create universal UIM coverage should not be defeated by an employer's choice to self insure. . . .

. . . .

". . . Bell Atlantic asks this Court to construe the statute to exclude self insurers because § 941(f) refers to a 'policy' of insurance and self insurers do not issue 'policies.' To conclude Bell Atlantic's interpretation of § 941(f) is the correct one, we would have to agree that the Legislature intended § 941(f) to *exclude* from its protection *all* motorists insured through self-insurance plans or surety bonds. That construction of § 941(f) is incompatible with the Legislature's intent to equate self insurance with a commercial insurance policy. . . . Bell Atlantic has not offered any rationale for making the distinction between commercial insurers and self insurers that it suggests here, and we cannot discern one from the

statutory language. Consequently, we conclude that § 941(f) directs mandatory UM/UIM coverage in all forms of motor vehicle insurance, including self insurance, so that all motorists have minimum protection from financially irresponsible drivers." 175 Vt. at 69-71.

In *AT&SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 71 P.3d 1097 (2003), this court was faced with multiple issues. One of the issues was whether AT&SF Ry. Co.'s (Santa Fe) self-insured retentions constituted "other insurance" that had to be exhausted before excess insurers might be liable. Santa Fe argued its self-insured retentions did not satisfy the policy requirements of "other valid and collectable insurance." We disagreed and concluded that the self-insured retentions were other insurance under the policy and, thus, were primary insurance. 275 Kan. at 753. We could not ignore the stated terms of the policies or the reality of self-insured retentions as primary insurance where the expectation and intent is to provide excess coverage. 275 Kan. at 754. We also concluded that under the facts of that case, Santa Fe's self-insured retentions constituted primary coverage for noise-induced hearing loss claims and, as such, were other *insurance* under the excess policies. Santa Fe was, therefore, required to exhaust the self-insured retentions before it could seek recovery under those policies. 275 Kan. 698, Syl. ¶ 7.

Clearly, this court treated self-insured retentions as insurance and placed a self-insurer in the same position as one who had purchased an insurance policy. Therefore, the answer to the second certified question is yes, in Kansas a self-insurer is required to provide uninsured motorist benefits to the occupants of its motor vehicles.

*Are plaintiffs' claims barred by the exclusive remedy provision of the Workers Compensation Act?*

When addressing this issue, we must be mindful of the well-established rule in Kansas applicable to uninsured motorist claims. This court consistently has held that uninsured and underinsured motorist statutes are remedial in nature and should be liberally construed to provide broad protection. See, *e.g., Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, Syl. ¶ 2, 847 P.2d 1292

(1993). Likewise, this court has always held that the purpose of the uninsured motorist legislation was to fill the gap in motor vehicle financial responsibility laws and provide a method for innocent persons damaged through the wrongful conduct of uninsured motorists who cannot be made to respond for the damages they caused. See 252 Kan. 675, Syl. ¶ 1.

The first place the majority should look when considering SBC's argument is the workers compensation statute. The exclusive remedy set forth in the statute applies to "personal injury by accident" (K.S.A. 44-501[a])—a tort action. This court has held that an uninsured motorist or underinsured motorist claim is not a tort action but a contract action. See *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 610-11, 549 P.2d 1354 (1976). For that reason alone, K.S.A. 44-501(b) does not bar plaintiffs' claim. This distinction has been noted and adopted by the Supreme Court of South Carolina in *Wright v. Smallwood*, 308 S.C. 471, 472, 475, 419 S.E.2d 219 (1992).

A review of K.S.A. 40-284 shows that the Kansas Legislature did not contemplate the workers compensation exclusive remedy rule prohibiting uninsured motorist claims. K.S.A. 40-284(e)(4) allows uninsured motorist carriers to exclude or limit coverage to the extent workers compensation benefits apply. The legislature allows insurers to limit their liability to avoid duplicate payments going to an injured party by the K.S.A. 40-284(e)(4) exclusion/limitation of workers compensation benefits. This exclusion/limitation was addressed by this court in *Kilner*, 252 Kan. 675, Syl. ¶ 4:

"K.S.A. 1992 Supp. 40-284(e)(4) allows an insurer to exclude or limit its uninsured and underinsured motorist coverage to the extent that duplicative workers compensation benefits apply. The legislature intended K.S.A. Supp. 40-284(e)(4) to permit an insured to recover underinsured motorist benefits which are not duplicative of workers compensation benefits. Any other result negates the legislature's intent to require underinsured motorist coverage protection."

The coordination of the UM/UIM and workers compensation statutes protects against double recovery by the worker but does not allow insurers to avoid uninsured motorist coverage in its entirety where an injured employee has suffered damages greater than the workers compensation benefits that may have been paid.

Finally, on more than one occasion this court has addressed K.S.A. 40-284(e)(4) and the issue of duplicative benefits and the amount of uninsured motorist coverage available to an injured employee who has received workers compensation benefits. See *Fisher v. State Farm Mut. Auto. Ins. Co.*, 264 Kan. 111, 955 P.2d 622 (1998); *Kilner*, 252 Kan. 675. In neither of those cases did this court suggest that an injured employee who had suffered damages greater than the workers compensation benefits would be barred from recovering uninsured motorist or underinsured motorist benefits. The answer to the first certified question is no. Under the facts of this case, plaintiffs' claims were not barred by the exclusive remedy provision of the Workers Compensation Act.

ALLEGRUCCI, J., joins in the foregoing dissent.