(158 .3d 369)
PNo. 96,543

JASMINE PONDS, by and through her Natural Mother and Next Friend, CLARESSA POOLE, on behalf of the Heirs of FRED PONDS, deceased, *Appellants,* v. THE HERTZ CORPORATION, HERTZ VEHICLES, L.L.C., and FARMERS INSURANCE COMPANY, INC., *Appellees,* and BUCKEYE STATE MUTUAL INSURANCE CO., and AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, *Defendants.*

Opinion filed May 25, 2007.

*Brian D. Pistotnik,* of Affiliated Attorneys of Pistotnik Law Offices, P.A., of Wichita, for appellants.

*Scott J. Gunderson,* of Nelson, Gunderson & Lacey, of Wichita, for appellees Hertz Corporation and Hertz Vehicles, L.L.C.

*Stanford J. Smith, Jr.,* and *Lora M. Jennings,* of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee Farmers Insurance Company, Inc.

Before HILL, P.J., MARQUARDT, J., and KNUDSON, S.J.

MARQUARDT, J.: Jasmine Ponds, by and through Claressa Poole, on behalf of Fred Ponds' legal heirs, appeals the trial court's grant

of summary judgment in favor of Farmers Insurance Company, Inc. (Farmers), and The Hertz Corporation and Hertz Vehicles, L.L.C. (Hertz). We affirm.

In April 2004, Angela Littlejohn rented a car from Hertz at the Wichita airport. Littlejohn, her sister, Stephanie Anukum, and her brother, Fred Ponds, were traveling together to a funeral in Texas. When she rented the vehicle, Littlejohn declined Hertz' optional liability insurance coverage. Littlejohn's personal vehicles were insured by Farmers. Anukum was driving the rental car at the time of the accident even though she was not listed as the driver on the Hertz rental agreement. The only driver listed on the Hertz rental agreement was Littlejohn. Anukum's personal vehicles were insured by Buckeye State Mutual Insurance Company (Buckeye).

En route to Texas, Anukum was driving in Oklahoma when a tractor-trailer ran the rental car off the road and through the median, where it collided with another car. The tractor-trailer did not stop, and the driver's identity remains unknown. Fred was killed. Both Farmers and Buckeye paid their policy limits to Fred's heirs.

Fred was Jasmine Ponds' father. Fred and Claressa Poole, Jasmine's mother, were not married. Claressa was insured by American Standard Insurance Company (American Standard). It does not appear that Fred carried automobile insurance. Hertz self-insures its vehicles.

In July 2005, Jasmine filed a petition claiming that Fred was an insured under the insurance policies issued by Farmers, Buckeye, and American Standard. During the pendency of this action, Buckeye was dismissed without prejudice and American Standard was granted summary judgment. They are not parties to this appeal.

In her petition, Jasmine claimed that Hertz was required to provide uninsured motorist (UM) coverage as the vehicle's owner. Hertz filed a motion for summary judgment claiming that as a self-insurer, it was not required to provide UM coverage, especially where the renter declined optional coverage. Farmers also filed a motion for summary judgment claiming that Fred was not covered under Littlejohn's automobile insurance policy because he did not meet the definition of an "insured person" under the policy. Farmers claimed that UM coverage was only extended to an insured

person or any person occupying an "insured car." Farmers argued that the rental car was not an "insured car" under the policy language.

The trial court granted Farmers' and Hertz' motions for summary judgment. The trial court found that Hertz' rental contract was not an insurance policy and self-insurers are not required to provide UM coverage. The trial court also found that Farmers' insurance policy was not ambiguous and Fred could not be considered an "insured" under Littlejohn's policy. Jasmine appeals the trial court's rulings.

On appeal, Jasmine acknowledges that in order for Fred to receive UM coverage, he would have to be an "insured person" under Littlejohn's policy. Jasmine believes Fred became an "insured person" by occupying Littlejohn's "insured car." Jasmine believes that the word "replace" as used in the policy provides Fred with UM coverage from Farmers. Jasmine contends that the term "replace" is ambiguous as to duration, meaning he was covered. Jasmine urges this court to find that a reasonable person would read the policy to cover a rental vehicle temporarily used in place of the insured's automobile.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 888, 107 P.3d 1219 (2005).

The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect deter-

mined by an appellate court. Whether an instrument is ambiguous is a matter of law, and this court's review of questions of law is unlimited. *State Farm Mut. Auto. Ins. Co. v. Lane*, 25 Kan. App. 2d 223, 226, 961 P.2d 64, *rev. denied* 265 Kan. 886 (1998).

In construing a policy of insurance, a court should consider the instrument as a whole to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured. *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 575, 56 P.3d 789 (2002).

If the language in an insurance policy is clear and unambiguous, it must be construed in its plain and ordinary meaning of the terms used. An insurance policy is ambiguous when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language. An ambiguity does not exist merely because the parties disagree on the interpretation of the language. To determine whether an insurance contract is ambiguous, the court must not consider what the insurer intends the language to mean. Instead, the court must view the language as to what a reasonably prudent insured would understand the language to mean. *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 111, 73 P.3d 120 (2003).

Littlejohn's insurance contract with Farmers states that it will pay all sums that an "insured person" is entitled to recover as damages from the owner or operator of an uninsured motor vehicle. The definition of "insured person" includes "[a]ny other person while **occupying your insured car**." The question for this court is whether the rented vehicle is an "insured car" under the policy.

Farmer's insurance policy defines "[y]our insured car" as:

"1. The vehicle described in the Declarations of this policy or any **private passenger car** or **utility car** with which you replace it. You must advise us within 30 days of any change of car. If your policy term ends more than 30 days after the change, you can advise us any time before the end of that term.

"2. Any additional **private passenger car** or **utility car** of which you acquire ownership during the policy period providing that:
    "a. You notify us within 30 days of its acquisition, and
    "b. As of the date of acquisition, all **private passenger** and **utility cars** you own are insured with a member company of the Farmers Insurance Group of Companies.
"3. Any **utility trailer**:
    "a. That you own, or
    "b. While attached to **your insured car**.
"4. Any **private passenger car, utility car** or **utility trailer** not owned by you or a **family member** while being temporarily used as a substitute for any other vehicle described in this definition because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction.
"5. Any vehicle leased under a written agreement to any person for a continuous period of at least six months shall be deemed owned by that person."

The second, third, and fifth clauses do not apply here. It could be argued that the fourth clause would apply, since Littlejohn rented the Hertz vehicle as a temporary "substitute." However, the record on appeal clearly reflects that Littlejohn's personal vehicle was not inoperable or in need of repair. Littlejohn rented a more comfortable vehicle for the long drive to Texas.

Thus, the only way that Fred could have been riding in an "insured car" is if the rental vehicle fell under the first clause of the definition and it was deemed a replacement vehicle. Farmers' policy does not define "replace" or "replacement."

Generally, in the absence of evidence that the word "replacement" had a meaning peculiar to the insurance field, or that the parties intended a different meaning in the automobile liability policy, the usual and ordinary meaning of the term replacement—to provide or produce a substitute or equivalent in place of a thing—would govern. *Continental Ins. Co. v. Entrikin*, 9 Kan. App. 2d 384, Syl. ¶ 1, 680 P.2d 913, *rev. denied* 235 Kan. 1041 (1984). A clear case of replacement occurs when disposition has been made of a vehicle described in the policy and a new vehicle of equivalent use is substituted. 9 Kan. App. 2d at 388.

Appellate courts in other states have reached similar conclusions. The Illinois Court of Appeals held that the term "replacement" does not apply if the "first insured vehicle remains operable and owned by the insured. 'A vehicle cannot be a "replacement" vehicle

under a policy of automobile insurance if the insured retains ownership of the "replaced" vehicle and if it remains operable.' " *American Freedom Ins. Co. v. Smith*, 347 Ill. App. 3d 1, 6, 806 N.E.2d 1136 (2004). Generally, a clause providing for coverage of a replacement vehicle assumes that there must be an actual replacement. 7 Am. Jur. 2d, Automobile Insurance § 135, p. 652.

The Farmers policy is not ambiguous when it comes to the word "replace." The temporary rental car did not serve as a replacement vehicle under the clear meaning of the policy language. Therefore, the trial court did not err by granting Farmers' motion for summary judgment.

Jasmine contends that this court must determine whether Hertz' rental agreement, which was signed by Littlejohn, amounts to an automobile liability insurance policy, such that K.S.A. 40-284(a) requires it to provide UM coverage. Jasmine acknowledges that Littlejohn waived the optional insurance coverage when renting the vehicle.

In its motion for summary judgment, Hertz raised the matter of the Kansas Supreme Court's decision in *Farmers Ins. Co. v. Southwestern Bell Tel. Co.*, 279 Kan. 976, 113 P.3d 258 (2005). In that case, the Kansas Supreme Court held that self-insurers are not required to provide UM coverage. 279 Kan. at 983-84. Given the *Farmers* decision and our duty to follow Supreme Court precedent, Jasmine's claim may succeed only if Hertz is not a self-insurer.

The record on appeal contains a certificate of self-insurance issued to Hertz by the Kansas Insurance Department in February 2002. The record on appeal also contains an excess rental liability policy, which covers those individuals who choose to pay for the optional insurance coverage when renting a vehicle from Hertz. This excess liability policy does provide UM coverage.

The rental agreement signed by Littlejohn contains the specific provision:

"IF YOU DO NOT PURCHASE LIABILITY INSURANCE SUPPLEMENT (LIS) (A SUMMARY OF LIS COVERAGE APPEARS BELOW) AT THE COMMENCEMENT OF THE RENTAL AND AN ACCIDENT RESULTS FROM THE USE OF THE CAR, YOUR INSURANCE AND THE INSURANCE OF THE OPERATOR OF THE CAR WILL BE PRIMARY."

We do not agree with Jasmine's argument that something in the Hertz rental agreement transforms it into an insurance policy. There is nothing in the language of the rental agreement which would give any reasonable person the idea that insurance coverage was provided by the act of renting a vehicle. Written instruments must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense. *Farm Bur. Mut. Ins. Co. v. Laudick*, 18 Kan. App. 2d 782, 784, 859 P.2d 410, *rev. denied* 253 Kan. 857 (1993).

The existence of the excess coverage and the terms of that policy belie Jasmine's claim that the rental agreement, by itself, affords any insurance protection. If that were the case, there would be no reason for Hertz to offer additional insurance coverage, and the excess liability policy would not be necessary. There would be no incentive for renters to pay an additional fee for insurance if the mere act of renting the car provided them with a full range of insurance protection, including UM coverage.

The trial court correctly ruled that Hertz was not required to provide UM coverage to Jasmine and did not err in granting Hertz' motion for summary judgment.

Affirmed.